IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE CANGE | : | CIVIL ACTION |
| | : | NO. 08-3480 |
| v. | : | |
| | : | |
| PHILADELPHIA PARKING | : | |
| AUTHORITY | : | |

O'NEILL, J.                                                          February 1, 2010

## MEMORANDUM

Plaintiff Marie Cange filed a complaint against her former employer, defendant

Philadelphia Parking Authority, alleging discrimination based on her national origin in violation

of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d and 2000e, the

Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991), and the Pennsylvania

Human Relations Act, 43 Pa. Stat. § 951 et seq.  Both parties have filed numerous motions in

limine with responses.  Plaintiff has also filed a motion to compel and defendant responded.

Relevant facts are set forth in my memorandum deciding the parties' cross motions for summary

judgment.

## **Motion to Compel**

Plaintiff seeks to compel defendant to produce an explanation regarding the disposition of

any videos which may have been taken of certain specified employees who were charged with

sleeping while on duty.  In its response to plaintiff's request for these videos, defendant stated

that no videos were available to be produced.  Plaintiff insists that defendant was aware as early

as February 2007 that it should preserve all of the requested videos.  However, she points to no

evidence or reason for me to believe that videos existed for all of these employees or, if they did

exist, were not destroyed in the regular course of defendant's business prior to February 2007.

Indeed, all of the incidents appear to have occurred in the fall of 2006 or earlier.

Fact discovery closed on May 1, 2009. Defendant provided plaintiff with documents pertaining to these witnesses in response to plaintiff's request in a timely fashion. Plaintiff does not suggest defendant improperly withheld any requested documents or in any other way attempted to delay or evade full and complete disclosure of documents. Plaintiff has been aware that defendant did not provide what plaintiff deems to be a full explanation of the disposition of the videos since the close of discovery, yet she waited over nine months after the close of discovery to move to compel. Plaintiff's motion to compel will be denied.

## Motions In Limine

Plaintiff and defendant each move to preclude the other from introducing certain evidence on the grounds that it is not relevant or unfairly prejudicial. Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403, an exception to the rule that all relevant evidence is generally admissible, provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

## I.    Defendant's Motion to Exclude Evidence of Purported Discrimination Against Elias Cange, Patrick Jacques and Marise Pierre

Defendant moves to preclude plaintiff from introducing evidence pertaining to defendant's decisions to terminate Elias Cange, Marise Pierre and Patrick Jacques. Defendant

anticipates that plaintiff will argue these three individuals were discriminated against by defendant on the basis of their Haitian national origin. Defendant argues such evidence should be excluded because it is irrelevant and unfairly prejudicial.

While evidence of other acts performed by a defendant is not admissible to prove that the defendant's action towards the plaintiff is "in conformity therewith," the other acts may be admissible to prove intent. Fed. R. Evid. 404(b). In employment discrimination cases, the Court of Appeals has permitted the introduction of evidence of other employees who allege discriminatory treatment by the employer if the evidence tends to make it any more or less probable that the employer had a discriminatory intent when it terminated the plaintiff. Abrams v. Lightolier, Inc., 50 F.3d 1204 (3d Cir. 1995) (finding evidence of how the employer treated other members of the protected class probative of whether the employer harbored a discriminatory intent towards the plaintiff); see also Becker v. ARCO Chemical Co., 207 F.3d 176, 194 n.8 (3d Cir. 2000) (collecting cases and stating "as a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination."). The Court has stated,

> The effects of blanket evidentiary exclusions can be especially damaging in employment discrimination cases, in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer's account of his own motives.
> . . . . .
> Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices-evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for [the] jury's assessment of whether a given employer was more likely than not to have acted

3

from an unlawful motive.

Glass v. Philadelphia Elec. Co., 34 F.3d 188, 195 (3d Cir. 1994) (quoting Estes v. Dick Smith

Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988)).

Evidence that the employer discriminated against other members of the protected class

requires a showing that the other employees' situations were closely related to the plaintiff's

circumstances, theory of the case and were temporally proximate. See Sprint/United Mgmt. Co.

v. Mendelsohn, 128 S. Ct. 1140 (2008) ("The question whether evidence of discrimination by

other supervisors is relevant in an individual ADEA case is fact based and depends on many

factors, including how closely related the evidence is to the plaintiff's circumstances and theory

of the case."); Stair v. Lehigh Valley Carpenters Local Union No. 600 of United Bhd. of

Carpenters and Joiners of America, 813 F. Supp. 1116, 1119 (E.D. Pa. 1993) (finding evidence

of discrimination against others was relevant only if the incidents were not too remote in time or

too dissimilar from plaintiff's situation).[1] In Stair, this Court considered whether evidence of sex

---

[1]     Defendant relies on Moorhouse v. Boeing Co., 501 F. Supp. 390, 393-94 (E.D. Pa. 1980), aff'd 639 F.2d 774 (3d Cir. 1980) which held that when six plaintiffs brought separate age discrimination cases against Boeing and one of the plaintiffs sought to introduce testimony from the other five plaintiffs at his trial in order to show a "pattern or practice" of discrimination the district court properly excluded this evidence as unduly prejudicial because each witness would have presented a prima facie case of discrimination, forcing Boeing to justify the layoffs or allow the testimony to stand unrebutted. The Court also noted that the testimony of the proposed witnesses "would be of little probative value to show the existence of a pattern or practice" of discrimination at Boeing. Id. See also Wilson v. Seven Seventeen HB Philadelphia Corp. No. 2, Civ. A. No. 99-1729, 2003 WL 22709073, at *8 (E.D. Pa. Nov. 14, 2003) (excluding evidence that plaintiff sought to introduce of discrimination by defendant in another suit alleging discrimination because it would have had little probative value in demonstrating a pattern or practice of discrimination in plaintiff's case). However, these cases are inapplicable because plaintiff does not seek to introduce the evidence to show a "pattern or practice" but rather to demonstrate discriminatory intent. See Abrams, 50 F.3d at 1215 n.12 (finding that defendant's reliance on Haskell v. Kaman Corp., 743 F.2d 113, 120 (2d Cir. 1984) was misplaced "because the Haskell plaintiff had admitted the evidence to show a 'pattern and practice' of discrimination,

discrimination by certain of the defendants against another woman, Kay Doyle, was relevant in the plaintiff's case. The defendants in that case argued the Doyle evidence was not relevant because circumstances involving the plaintiff and Doyle were not similar. Plaintiff was a union member and Doyle was a secretary for the union. There was also a lack of identity between all of the defendants in the Doyle case and the defendants in the Stair action. This Court found that such differences did not render the evidence of discrimination against Doyle irrelevant.

Relevant evidence may be excluded when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or confusion of the issues. Thus, in Stair, 813 F. Supp. at 1119, because the events involving Doyle had occurred four years prior to the events involving the plaintiff, this Court held that the probative value of the evidence was outweighed by the danger of unfair prejudice under Rule 403 due to the lengthy gap in time. Cf. Abrams, 50 F.3d at 1215 ("Although we find the so-called 'testimonials' of former employees to be less probative of Kurtz's discriminatory attitude and more inflammatory than Kurtz's two age-based comments, we cannot conclude that the determination that its probative value outweighed its prejudicial impact was 'irrational and arbitrary.'")

### A.    Elias Cange and Patrick Jacques

Defendant argues that evidence pertaining to Elias Cange and Patrick Jacques is irrelevant because the circumstances surrounding their terminations are not sufficiently similar to plaintiff's situation. I find that the evidence pertaining to Cange and Jacques is relevant and should not be excluded. Defendant's motion to exclude all evidence pertaining to these two

_____

[and therefore] the court was not addressing whether the evidence was probative of a discriminatory attitude on the part of the employees' supervisor.")

witnesses will be denied. Plaintiff may introduce evidence relating to Cange and Jacques that tends to make it more probable that defendant acted with a discriminatory intent when it terminated plaintiff. Plaintiff argues this evidence demonstrates that Cange and Jacques were terminated for violating defendant's policies and did not receive progressive discipline while non-Haitian co-workers were not terminated but received suspensions and warnings.[2] If proved, such inconsistent behavior on the part of defendant could cause a reasonable jury to doubt the reason offered by defendant for its termination of plaintiff.

The events related to Cange and Jacques occurred in 2005–just one year before the events related to plaintiff. As with plaintiff, William Raymond conducted Cange's and Jacques's grievance hearings. All three allege the discrimination against them was based on their national origin–Haitian. Although there are some differences between Cange and Jacques's terminations on the one hand and plaintiff's termination on the other–e.g. Cange and Jacques' terminations were based on issues related to misappropriation of money while the reason cited for plaintiff's termination was sleeping on duty–I do not find that these differences render the probative value of the evidence outweighed by unfair prejudice.

**B.    Marise Pierre**

Defendant also moves to preclude plaintiff from introducing the testimony of Pierre. Plaintiff contends that Pierre's testimony is relevant because it is evidence of the atmosphere in

---

[2]    It is unclear from the record evidence presented to me what defendant's "progressive discipline policy" is, but it appears to involve issuing warnings and/or suspensions of varying lengths of time prior to terminating an employee. Defendant contends that progressive discipline is not applicable to certain offenses such as sleeping while on duty. Plaintiff contends the progressive discipline policy was not uniformly administered as between Haitians and non-Haitians.

which plaintiff worked. Pierre, a Haitian, testified at her deposition that she resigned her position as a cashier after plaintiff was terminated because a co-worker told her "you better be careful. They are watching you. They are watching you, because [they don't want] any Haitian [sic] work here." On another occasion, this same co-worker told Pierre "be careful. They say [sic] only want Asian people working here." Pierre stated the comments made her feel "unsafe" and she resigned before anything "bad" could happen to her.

"[T]he atmosphere in which the company made its employment decisions" may be considered as circumstantial evidence of discriminatory intent. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 641 (3d Cir. 1993). In Josey, the undisputed evidence was that the defendant's employees indicated to the plaintiff that they believed he was promoted only because he was African American. The plaintiff also received anonymous racially derogatory notes in his office. The Court held that "[o]ne could infer from employees' remarks and the racially derogatory notes received that management permitted an atmosphere of racial prejudice to infect the workplace."

Pierre's testimony will be excluded. First, I find it is irrelevant because her testimony does not describe the "atmosphere in which the company made its employment decision" related to plaintiff's termination. The comments do not relate to the atmosphere in which employment decisions were made and they were made after the decision to terminate plaintiff. Second, Pierre's testimony about comments she heard from a co-worker is hearsay. The co-workers comments cannot be considered evidence of defendant's discriminatory intent as she was not a supervisor or a person involved in the decision to terminate plaintiff. Finally, while plaintiff may argue that the statements are not hearsay because they were made to show the effect on the

listener, I find that even if the evidence were admissible its slight probative value is outweighed by the unfair prejudice to defendant. The defendant will be unable to call the anonymous co-worker to the stand and verify that the statements were made, what Pierre's reaction to the statements were at the time, or ask any other pertinent question. I also note that this case is distinguishable from Josey because here the co-worker's comments were made after plaintiff's termination and they were not inherently offensive. I recognize that plaintiff has a "difficult task of persuading the fact-finder to disbelieve an employer's account of his own motives." Glass, 34 F.3d at 195. However, the risk to the defendant of unfair prejudice, confusion of the issues and misleading the jury leads me to exclude the evidence. Therefore, defendant's motion with respect to Pierre will be granted.

## II. Plaintiff's Motion to Exclude Evidence of Carinn Irvin-Dockery, Ruth Wilder, Terri Hawkins, Ronald Alexander and Rosalyn Rodriquez

Plaintiff moves to preclude defendant from introducing any evidence at trial pertaining to Carinn Irvin-Dockery, Ruth Wilder, Terri Hawkins, Ronald Alexander and Rosalyn Rodriquez. These witnesses are not Haitian and were terminated for sleeping or loafing on duty. Plaintiff argues that evidence pertaining to these five witnesses should be excluded because their testimony is irrelevant as the individuals are not "similarly situated" to the plaintiff. She also argues it should be excluded because the evidence would be unfairly prejudicial.

To prove a prima facie case of race discrimination, a plaintiff must prove that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, (4) and that non-members of the protected class were treated more favorably than she. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Gaspar v. Merck and

Co., Inc., 118 F. Supp. 2d 552, 555 (E.D. Pa. 2000). When relying on comparator evidence to make out the fourth element of a prima facie case of discrimination, the plaintiff must demonstrate that she and the comparators were "similarly situated." This term has a specific meaning and requires the plaintiff to show that the comparators "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Anderson v. Haverford College, 868 F. Supp. 741, 745 (E.D. Pa. 1994) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Plaintiff argues that like the comparators used to prove a prima facie case defendant's witnesses must also be "similarly situated" to the plaintiff. However, none of the cases from the Third Circuit that plaintiff cites in support of this argument stand for such a proposition. In Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002), the district court, quoting Kendrick v. Penske Transp. Serv., Inc., 220 F.3d 1220, 1232 (10th Cir. 2000), stated "[i]t is well-established that 'a plaintiff may . . . show pretext on a theory of disparate treatment by providing evidence that [she] was treated differently from other similarly-situated . . . employees . . . .'" The Ogden Court made this statement in the context of holding that the plaintiff had failed to prove her prima facie case, not that she failed to rebut the defendant's legitimate nondiscriminatory reason for her termination. All of the other cases cited by the plaintiff in support of the same argument, i.e. that in order to prove an employer's proffered legitimate reason was not pretext the comparators must be similarly situated, do not concern demonstrating pretext; rather each of these cases involved a finding that the plaintiff failed to prove his or her prima facie case. Bullock v. The Children's Hosp. of Philadelphia, 71 F. Supp. 2d 482, 489 (E.D. Pa. 1999) (holding plaintiff's comparator evidence could not support her prima facie case

because the white employees to whom she sought to compare herself were not similarly situated); Kimble v. Morgan Props., Civ. A. No. 02-9359, 2004 WL 2536838, at *3 (E.D. Pa. Nov. 8, 2004) (granting defendant's motion for summary judgment on plaintiff's race discrimination claim because the white employee to whom he sought to compare himself was not similarly situated); Red v. Potter, 211 Fed. Appx. 82 (3d Cir. 2006) (same).

Plaintiff's motion to exclude the testimony of these five witnesses will be denied. Defendant may introduce evidence related to Irvin-Dockery, Wilder and Rodriquez. Evidence that these three non-Haitian employees were terminated after having been found sleeping while on duty is relevant as it tends to demonstrate that defendant did not act with a discriminatory intent when it terminated plaintiff. To the extent plaintiff argues that these employees are not sufficiently similar to plaintiff, I disagree. Plaintiff notes that she was a cashier and none of defendant's witnesses were cashiers. In Stair–a case plaintiff cites in support of her opposition to defendant's motion to exclude Elias Cange, Patrick Jacques and Marise Pierre–this Court did not exclude the plaintiff's evidence to show pretext because the plaintiff was a union member and the other employee was a secretary for the union. Stair, 813 F. Supp. at 1119. While a cashier certainly has different job responsibilities than an inventory clerk or a maintenance crew member, plaintiff does not argue that an inventory clerk or a maintenance crew member would be treated differently than a cashier if found sleeping or loafing on the job. Thus, although there are clearly differences in their job responsibilities, those differences are not relevant with respect to the present inquiry.

Plaintiff asserts that Hawkins and Alexander were revenue supervisors and therefore managers. She cites no record evidence in support of this or the proposition that "they were held

to a higher standard than other employees." Therefore, I find no reason to treat Hawkins and Alexander differently than Irvin-Dockery, Wilder and Rodriquez. Presently, I find the probative value of the evidence–evidence which tends to show that defendant acted according to its policies and terminated both Haitian and non-Haitian workers found sleeping or loafing on the job–outweighs plaintiff's concern that she will need to demonstrate why in each of these cases defendant did not act in accordance with its policies.

### III. Defendant's Motion to Exclude Evidence of Work History and Disciplinary Records of Other Employees

Defendant moves to exclude 74 documents identified in Schedule A of plaintiff's proposed exhibits for trial which pertain to Kim Earland and James Aria, two non-Haitian cashiers who were not terminated after being charged with sleeping or loafing while on duty. The documents defendant seeks to exclude do not relate to the sleeping or loafing incidents but involve other disciplinary matters. Defendant also moves to exclude 92 documents identified in Schedule B of plaintiff's proposed exhibits for trial which pertain to Rodriquez, Matthews and Fisher. These three individuals were also charged with sleeping or loafing while on duty but were not terminated. Defendant seeks to exclude those document that do not relate to sleeping or loafing incidents. It argues the documents are not relevant and are unfairly prejudicial.

Plaintiff does not oppose defendant's motion with respect to Rodriquez, Matthews and Fisher. Therefore, defendant's motion will be granted in part and the work history and disciplinary records of these three witnesses which do not relate to sleeping or loafing incidents will be excluded.[3]

---

[3]     Plaintiff also states in her Memorandum of Law (D. No. 39) that she does not oppose exclusion of documents pertaining to the work history and disciplinary records of Irvin-

However, that part of defendant's request to exclude Earland's and Aria's work histories and disciplinary records which do not relate to sleeping or loafing incidents will be denied. Defendant argues that these records are not relevant because there is no evidence that the decisionmakers involved in Earland, Aria or plaintiff's disciplinary matters considered these records. Defendant gives a lengthy explanation about Defendant's progressive disciplinary process and why the disciplinary matters it seeks to exclude could not be considered by the decisionmakers.

Plaintiff argues that the records are relevant to demonstrate that defendant's stated reason for terminating her is pretext. This would be persuasive if she were claiming that her prior work history and disciplinary records were considered by defendant when she was terminated, but that Earland and Aria's records were not considered when they were not terminated. However, those are not the facts of this case. Plaintiff admits that her work history and disciplinary record were not considered as part of the decision to terminate her.

Plaintiff also argues that the records are "highly relevant to establish defendant's general discriminatory propensities toward foreign-born, black Haitians." As discussed in sections I and II supra, whether defendant complied with its own progressive disciplinary process would tend to make it more or less probable that it fostered and permitted an atmosphere of discrimination. If defendant did not comply with its progressive disciplinary process with respect to Earland and Aria (by not considering their work histories and disciplinary records when it should have) but considered the records of Cange and Jacques, then this would tend to show that defendant's decision-making process was biased against Haitians. While defendant argues in its motion that

Dockery, Wilder, Hawkins and Alexander.

its progressive disciplinary process was properly applied in each case, this is a question of fact for the jury to determine. Furthermore, evidence that defendant failed to comply with its process after plaintiff was terminated is still relevant to establishing that defendant operated within an atmosphere of discrimination, especially if the same decisionmakers involved in plaintiff's termination were those shown to have improperly applied the progressive disciplinary process.

Defendant asserts that disciplinary determinations with respect to sleeping and loafing while on duty are made without reference to an employee's record because that is what is "required" by Defendant's collective bargaining agreement with the union. It concludes that such records are irrelevant. I disagree. In support of its argument, defendant quotes Article XIII of the agreement. Article XIII, titled "Discipline" states:

> Before a discharge or suspension, the Employer must first have given at least one (1) written warning notice of the complaint against such employee to the employee, with a copy to the Union. No warning notice need be given to an employee before he is discharged or suspended if the cause of such discharge is:
> A. Calling an unauthorized strike or walkout.
> B. Drunkenness, drinking during working hours (including lunch time) or being under the influence of liquor or drugs during working hours (including lunch time).
> C. Proven theft or dishonesty, including ticket manipulation.
> D. Unprovoked assault on his Employer or his Employer's representative during working hours.
> The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from the date of said warning notice . . . .

Article XIII requires a written warning notice be given to the employee unless the infraction falls within one of the exceptions to the rule and provides that this notice only remains in effect for nine months. First, contrary to defendant's contention, nothing in Article XIII states that employee records are irrelevant to a determination that an employee should or should not be

terminated for sleeping or loafing while on duty. Nor does this portion of the agreement specifically exclude such records from a decisionmaker's consideration. Second, this portion of the agreement does not support defendant's contention that defendant imposes progressive discipline only for "similar offenses." In support of this statement, defendant cites only the deposition of William Raymond who was the decisionmaker involved in terminating plaintiff and not terminating Earland and Aria.[4] Finally, defendant contends that Article XIII precludes a decisionmaker from considering as part of progressive discipline any infraction which occurred more than nine months before the current violation. Article XIII states that warning notices–which must be issued before a discharge or suspension–only remain in effect for a period of nine months. Presumably, the purpose of this is to require a new warning notice to be issued if a separate infraction occurs after nine months for which the employer seeks to discharge the employee. However, Article XIII does not preclude a decisionmaker from considering infractions occurring more than nine months before.

Defendant also argues that evidence of Earland and Aria's records is unfairly prejudicial because it will tend to confuse the jury. I find that the risk of confusing the jury is small and is outweighed by the probative value of the evidence in demonstrating that termination decisions for sleeping or loafing while on duty were not made by applying the same progressive discipline rules to Haitians and non-Haitians alike.

---

[4]     I also note that the agreement states that "[u]niform rules and regulations with respect to disciplinary action or plant procedures may be drafted by the Employer provided they do not conflict with any provision of this Agreement and are approved by the Union. Such approved rules and regulations when posted in a conspicuous place in the plant shall be binding upon the Employer and the employees." Art. XIII. Defendant does not cite to any approved policy that progressive discipline is not considered with respect to findings of sleeping or loafing while on duty or that it is only considered with respect to similar offenses.

**IV.    Defendant's Motion to Exclude Evidence Relating to Defendant's Requirement of Proof of Citizenship/Permanent Residence and Plaintiff's Rebuttal Witness**

Defendant moves to preclude plaintiff from introducing evidence related to its request that employees provide proof of citizenship or permanent residence when defendant took over airport operations in 2004. Plaintiff indicated in her first pretrial memorandum that she seeks to call H. Ronald Klasko, Esq. as a rebuttal witness "if [defendant] takes the position [at trial] that its [requirement that employees provide these documents] is in conformity with the Immigration Reform and Control Act of 1986." D. No. 19 at 15. Defendant argues this evidence is irrelevant and unfairly prejudicial.

In its letter of October 25, 2004, defendant stated that employees reporting to an orientation session were to bring with them–along with other forms and documents–"proof of citizenship or one of the following INS issued documents, U.S. Citizen ID Card (INS Form I-197), Resident Citizen in the United States (INS Form I-179)." When she was hired by defendant in November 2004, plaintiff presented her U.S. passport which reflected that she was born in Haiti. A copy of her passport became a part of her personnel file. She alleges this file was available to the decisionmakers involved in her termination.

The October 25, 2004 letter is relevant. It tends to make it more probable that plaintiff brought her passport–a document which reveals her national origin–as opposed to another valid form of identification which would not reveal her national origin because defendant's letter requested that she bring "proof of citizenship." Defendant's motion to exclude all evidence related to plaintiff's hiring by defendant in November 2004, including the letter, will accordingly be denied in part.

However, plaintiff will not be permitted to engage in a line of argument that seeks to demonstrate defendant committed "document abuse."  While plaintiff argues that the request in this letter is inconsistent with IRCA,[5] plaintiff does not dispute that in practice defendant accepted all documentation deemed acceptable by form I-9.  She does not argue that she or other employees were in fact required to show more or different documents than what the law allows. The letter is irrelevant with respect to showing that defendant's proffered legitimate nondiscriminatory reason for terminating her is pretext.  This letter was issued two years prior to the incident involving plaintiff.  Furthermore, the letter was written by Vincent J. Fenerty, Jr. who was not involved in the decision to terminate plaintiff.  Even if the letter were circumstantial evidence that in October/November of 2004 Fenerty and others who may have been involved in the issuing of the letter had an intent to discriminate against non-citizens, that does not make it more or less probable that in September/October of 2006 William Raymond and others involved in the decision to terminate plaintiff had an intent to discriminate against Haitians.  Therefore, defendant's motion to preclude plaintiff from introducing the testimony of her rebuttal expert will be granted because the issue of whether defendant's requirement that employees provide specific documents is or is not in conformity with the IRCA is irrelevant.[6]

---

[5]     The IRCA states, "A person's or other entity's request, for purposes of satisfying the requirements of section 274A(b) [8 U.S.C. § 1324a(b)], for more or different documents than are required under such section or refusing to honor documents tendered that on their face reasonably appear to be genuine shall be treated as an unfair immigration-related employment practice if made for the purpose or with the intent of discriminating against an individual in violation of paragraph (1)."  8 U.S.C. § 1324b(a)(6).

[6]     For the same reason, if plaintiff requests that I take judicial notice that "when an employer, such as the Philadelphia Parking Authority, asks employees provide "proof of citizenship," U.S. citizen ID Card (INS Form I-197), or Resident Citizen of the United States (INS [F]orm I-179), such employer is in violation of the Immigration Reform and Control Act of

## V. Defendant's Motion to Exclude Evidence of Plaintiff's Purported Status as a Union Shop Steward

Defendant's motion to exclude evidence regarding plaintiff's purported status as a shop steward for Teamsters Local Union No. 115 will be granted. When she was employed by Central Parking Corporation, plaintiff was elected shop steward by her colleagues and was called upon to participate in hearings when an employee was written up or disciplined. When defendant took over airport operations she was no longer called upon to serve as shop steward. She does not refute that the defendant had no control over which shop stewards were called to serve at these hearings. She testified in her deposition that she complained to Joseph Boschetti, a manager, that she was not being called on due to discrimination. He did not take any action in response to her complaint. She argues his "failure to act" is circumstantial evidence that defendant fostered an atmosphere which was tolerant of discrimination against Haitians. However, Boschetti's "failure to act" does not tend to make it more or less probable that defendant tolerated an atmosphere of discrimination because defendant had no control over who was called to serve as shop steward. Because Boschetti could not have done anything about plaintiff not being called to serve, his "failure to act" is irrelevant.

## VI. Defendant's Motion to Exclude Testimony by Plaintiff Regarding Her Purported Economic Damages in the Nature of Front Pay and Lost Pension Benefits

Plaintiff's pretrial memorandum states that she will seek back pay, front pay, lost pension benefits, compensation and damages for humiliation, emotional upset and other non-economic injuries, punitive damages, attorneys' fees and costs. (D. 19 at 11-12). Defendant moves to

---

1986 and is engaged in discriminatory documentary practices related to 'document abuse,'" (Pl. Pretrial Memo, D. 19, at p. 19) I will deny the request.

exclude testimony by plaintiff regarding her purported economic damages in the nature of front pay and lost pension benefits.

Citing Donlin v. Philips Lighting North America Corp., 581 F.3d 73 (3d Cir. 2009), defendant argues that under Federal Rule of Evidence 701(c) plaintiff is not qualified to testify to the predicate elements necessary to establish prospective economic damages such as front pay and lost pension benefits. Defendant contends that lay witness testimony addressing future wage increases, work expectancy, present value discount and lost pension benefits is inadmissible. Rather, testimony regarding these elements of her purported economic damages must be presented at trial through a qualified expert.

In opposition to defendant's motion, plaintiff argues that 701 allows her to testify regarding front pay because her lay witness testimony will be based on personal knowledge rather than on specialized or scientific knowledge. In attempting to distinguish herself from the plaintiff in Donlin, plaintiff contends that expert testimony is unnecessary because she has "verifiable information regarding her earnings history and anticipated salary increases" and therefore "her front pay testimony will require only arithmetic, not economic forecasting."

There is no right to a jury trial under Title VII on a claim for back pay or front pay. See 42 U.S.C. § 2000e-5(g)(1); Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 849-50 (2001); Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 (3d Cir. 2006). However, in certain circumstances an advisory jury may be empaneled to render an advisory determination on the issue of front pay and back pay. See Fed. R. Civ. P. 39(c) and Third Circuit Model Civil Jury Instructions § 5.4.3 comment and § 5.4.4 comment (the parties may agree to a jury determination on back pay and front pay). The decision whether to empanel an advisory jury is entirely within

my discretion. Thus, at most a jury's role is only advisory on the issue of back pay and front pay because these are equitable remedies to be determined by the court. <u>See</u> 42 U.S.C. § 2000e-5(g)(1); <u>Pollard</u>, 532 U.S. at 849-50; <u>Spencer</u>, 469 F.3d at 316. I do not know whether the parties agree to have an advisory jury hear the evidence on front pay and back pay. Defendant's motion in limine will be held in abeyance until the parties inform me whether such an agreement has been reached. If the issues of front pay and back pay are not heard by an advisory jury, then proof of these items will be submitted to me after the trial if the jury renders a verdict for plaintiff on liability. Of course, plaintiff will be permitted to prove her "non-economic damages" to the jury.

### VII.    Plaintiff's Motion to Exclude the DVD of Her Shift on September 12, 2006

Plaintiff moves to exclude a DVD which defendant seeks to introduce at trial containing three video segments of plaintiff during the shift in which she was found sleeping on duty. She argues that two of the segments on the DVD are irrelevant and the entire DVD is unfairly prejudicial. Plaintiff's motion will be denied.

Plaintiff contends that the only relevant segment is the one taken from 4:01 to 4:04 a.m. and that the two other video segments (3:24 a.m. and 4:22-4:25 a.m.) are irrelevant because they did not provide the basis for her termination. William Raymond stated in his deposition that plaintiff was not terminated for anything she did or did not do before 4:00 a.m. and specifically that she was not disciplined for what occurred at 3:24 a.m. From this, plaintiff concludes the segment from 3:24 a.m. should be excluded. However, this segment did provide part of the basis for the Video Incident Report in which it was noted "Cashier asleep off and on between 4 & 5 AM and during rest of shift . . . ." Defendant argues that Report and the 3:24 a.m. video segment

were reviewed by Joseph Boschetti, defendant's Manager-Airport Administration, and Frank Ragozzino, defendant's Director of Airport Operations, and formed the basis of their decision to suspend plaintiff with intent to dismiss. One of plaintiff's central arguments in her case is that defendant did not follow its policies when it terminated her which evidences a discriminatory intent. This segment of the video is relevant because it makes it more probable that Boschetti and Ragozzino followed proper procedures and that the decision to suspend with intent to terminate was based on a finding that she was sleeping on duty and not based on discrimination.

Next, she argues there is no dispute that she was on her "lunch break" during the 4:22 to 4:25 a.m. segment. Therefore, she contends that segment should be excluded because she was not disciplined for sleeping during that time. For the same reasons stated above with respect to the 3:24 segment, I find that the 4:22 segment is relevant. Thus, the entire DVD is relevant.

Plaintiff also argues that introduction of the DVD would be unfairly prejudicial because defendant has not produced the videos of Earland, Aria, Rodriquez, Fisher and Matthews. She argues the jury would place more weight on the video of her and not as much weight on the incidents involving the other employees. I find that the probative value that the video provides is not outweighed by the slight risk of prejudice to the plaintiff in this regard. The video tends to show whether it is more or less probable that plaintiff was terminated for the legitimate reason that she was sleeping. This is direct evidence of defendant's proffered legitimate reason for terminating her and also rebuts plaintiff's position that defendant's reason is pretext.

**VIII.  Plaintiff's Motion to Exclude Evidence Concerning PHRC's Letter of No Probable Cause and EEOC Dismissal/Notice of Right to Sue**

Defendant has listed the PHRC determination letter of October 3, 2007 and the EEOC

dismissal and notice of rights letter dated April 29, 2008 as potential exhibits for trial in its pre-trial memorandum.  Plaintiff seeks to exclude these two documents on the grounds that they are irrelevant, hearsay and unfairly prejudicial.  Defendant agrees that it will not attempt to introduce evidence relating to the EEOC and PHRC determinations.  Plaintiff's motion to exclude the documents is moot.

**IX.  Defendant's Motion to Exclude the Expert Testimony of Andrew Verzilli**

On January 22, 2010, plaintiff filed an Amended Pretrial Memorandum which states that she anticipates using Andrew Verzilli whom she describes as a "tax expert" in the event that she prevails on her claims and is awarded back pay.  The Court of Appeals has recognized that a plaintiff who prevails on her claim of employment discrimination may be entitled to a "monetary award to offset the negative tax consequences of receiving the back pay the jury awarded her in a single lump sum."  Eshelman v. Agere Systems, Inc., 554 F.3d 426, 432 (3d Cir. 2009).  Thus, it appears that plaintiff seeks to use the testimony of Verzilli to establish what amount, if any, plaintiff would be owed to offset the negative tax consequences of receiving her lost wages in one lump sum.  Verzilli's testimony is relevant only if the jury finds in favor of the plaintiff and awards her back pay.

Defendant objects to this testimony because Verzilli was never identified during discovery and never produced an expert report.  See Fed. R. Civ. P. 26(a)(2)(A) and (B).  In response, plaintiff notes that in Eshelman the parties discussed the issue of negative tax consequences at a pretrial conference and agreed that the issue would be addressed by post-trial motions.  Eshelman, Civ. A. No. 03-1814, Pl.'s Mot. To Mold Verdict To Incl. Prejudgment Int. And Damages Resulting From Tax Consequences (D. No. 66), at 1, and Def.'s Resp. In Opp. (D.

No. 77), at 2.  The plaintiff's tax consequences expert in <u>Eshelman</u> was also listed in her Pre-trial Memorandum.  Pl. Pretrial Memorandum (D. No. 51), at 8.  Plaintiff also argues that because lost wages have not been awarded Verzilli cannot produce an expert report yet.

I will deny defendant's motion.  If plaintiff prevails at trial and if plaintiff is awarded lost wages she will be required to submit a report from Verzilli in support of a claim for negative tax consequences.  Because this issue will not be tried to the jury, defendant's concern that the expert was not identified during discovery is mitigated.  Defendant will have ample time post-trial to review Verzilli's report and make its arguments in opposition.

An appropriate Order follows.