IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIE CANGE | : | CIVIL ACTION |
| | : | NO. 08-3480 |
| v. | : | |
| | : | |
| PHILADELPHIA PARKING AUTHORITY | : | |
| | : | |

O'NEILL, J.                                                                                                         April 1, 2010

## MEMORANDUM

Plaintiff Marie Cange filed a complaint against her former employer, defendant Philadelphia Parking Authority, alleging discrimination based on her national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d and 2000e, the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991), and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 et seq. After the trial, the jury could not reach a unanimous decision on all the questions on the verdict form. Defendant has moved for judgment as a matter of law pursuant to Rule 50. Plaintiff has moved for a mistrial and requests a new trial only on those questions that the jury did not answer unanimously. I have before me defendant's memorandum of law in support of its motion for judgment as a matter of law, plaintiff's response and defendant's reply. Oral argument was held on March 26, 2010.

## BACKGROUND

The trial lasted four days. At the close of plaintiff's case in chief, defendant moved for judgment as a matter of law pursuant to Rule 50(a) and I reserved ruling on that motion. After the close of all the evidence, defendant renewed its motion for judgment as a matter of law pursuant to Rule 50(b) and I again reserved my ruling on that motion. Defendant also objected to the instruction of the jury on the issue of mixed-motive and I overruled the objection. The jury

was charged on both mixed-motive and pretext and began deliberations on Friday, February 19, 2010. After several hours of deliberation on Friday, the jury informed me that it had unanimously found that plaintiff had not proved by a preponderance of the evidence that her national origin was a determinative factor in defendant's decision to terminate her, i.e. the pretext question. However, the jury was at an impasse as to whether plaintiff had proved by a preponderance of the evidence that her national origin was a motivating factor in defendant's decision to terminate her, i.e. the mixed-motive question. I instructed the jury to continue its deliberations through the end of the day Friday and to return on Monday. After further deliberations on Monday, the jury informed me again that they were at an impasse. The parties did not agree that the jury could return a non-unanimous verdict on any of the remaining questions. I took the jury's verdict on the question on which it was able to reach a unanimous verdict and then discharged the jury. Thereafter, plaintiff moved for a mistrial and for a new trial to be held only on those questions that the jury did not answer.

## STANDARD OF REVIEW

**A.     Motion for Judgment as a Matter of Law**

Rule 50(b) of the Federal Rules of Civil Procedure governs the Court's ability to grant judgment as a matter of law after a jury trial. It is a sparingly invoked remedy and is appropriate only where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). In determining whether such a legally sufficient evidentiary basis exists, the Court must review all the evidence in the record and draw all reasonable inferences in favor of the non-moving party. Id. at 150.

The Court may not, however, make credibility determinations or weigh the evidence–those functions are reserved for the jury. Id. In sum, a motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993); see also Reeves, 530 U.S. at 148-49 (finding that "an employer would be entitled to judgment as a matter of law . . . if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.") The same standard applies when a jury is deadlocked. See Noonan v. Midland Capital Corp., 453 F.2d 459, 463 (2d Cir. 1972); Kerman v. City of New York, 261 F.3d 229 (2d Cir. 2001).

**B.** **Motion for a New Trial**

Rule 59 governs the Court's ability to grant a new trial. The rule allows the Court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). Where a new trial is sought because the jury could not reach a unanimous verdict on all of the questions, the Court may either declare the entire case a mistrial and order the case reheard in its entirety with a different jury, Franki Found. Co. v. Alger-Rau & Assoc., Inc., 513 F.2d 581, 585 (3d Cir. 1975), or "order a partial retrial only as to those issues which were not unanimously agreed upon by the jury." Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1581 (Fed. Cir. 1995) (citing James W. Moore et al., Moore's Federal Practice ¶ 49.37 (2d ed. 1993)).

ANALYSIS

The Court of Appeals has held that a Title VII plaintiff may state a claim for national origin discrimination under either the pretext theory set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), or the mixed-motive theory first set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), "under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons." Makky v. Chertoff, 541 F.3d 205, 213 (3d Cir. 2008). The Civil Rights Act of 1991 articulates the applicable standards in a mixed-motive case. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 94, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 251, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)) (noting that "§ 107 of the 1991 Act . . . 'responded' to Price Waterhouse by 'setting forth standards applicable in mixed motive cases in two new statutory provisions.'"). Thus, a plaintiff may establish an unlawful employment practice by demonstrating "that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).[1]

### A. Knowledge of Plaintiff's National Origin

In order for a plaintiff's national origin to have been a motivating factor in the defendant's decision to terminate her, it logically follows that the defendant must know the plaintiff's national origin. Geraci v. Moody-Tottrup, Intern., Inc., 82 F.3d 578, 581 (3d Cir.

---

[1] The Act also gives the employer a limited affirmative defense to "demonstrate[] that [it] would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B)). If proven, this defense limits the plaintiff's relief to declaratory relief, limited injunctive relief, attorneys' fees and costs. Id.

1996) ("it is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant . . ."). Defendant argues that there is no evidence that William Raymond knew plaintiff was Haitian.[2]

Plaintiff points to two reasons why a reasonable jury could conclude that Raymond knew she was Haitian.[3] First, plaintiff completed certain personnel forms at the time she was hired by defendant that indicated she is from Haiti. At the time the forms were completed Raymond was the Deputy Director of Human Resources and his department employees collected and processed those documents. Plaintiff testified that she gave the documents to someone in Human Resources–not Raymond. Consistent with plaintiff's testimony, Raymond testified that he was not responsible for collecting or reviewing those forms. Raymond also testified on direct

---

[2] In her response, plaintiff apparently concedes that Frank Ragozzino and Joseph Boschetti did not discriminate against her based on her national origin. While plaintiff testified during rebuttal that Ragozzino and Boschetti knew of her national origin through various conversations, there is no evidence that Ragozzino or Boschetti treated plaintiff differently than non-Haitians. Indeed, they suspended with the intent to terminate all employees found sleeping on duty including plaintiff's two comparators, James Aria and Kim Earland. Therefore, I find that no reasonable jury could conclude that plaintiff's national origin was a motivating factor in Ragozzino's or Boschetti's decision to suspend plaintiff with the intent to terminate.

With respect to Linda Miller, the Step III hearing officer, plaintiff argues that her refusal to take into consideration the doctor's note is evidence of discrimination. However, plaintiff did not offer any evidence that Miller knew that plaintiff is Haitian. Therefore, I also find that no reasonable jury could conclude that plaintiff's national origin was a motivating factor in Miller's decision to uphold the Step I decision to terminate plaintiff. This memorandum will focus on Raymond as the remaining decisionmaker involved in plaintiff's termination.

[3] In addition, I note that plaintiff testified at trial that "everyone" at the airport knew she was Haitian. This is irrelevant to prove that Raymond knew she was Haitian because Raymond did not work at the airport but rather at defendant's Market Street offices. She also testified that people knew she was from Haiti because she brought traditional Haitian food and talked about her national origin at the Christmas potluck dinner for employees. However, there is no evidence that Raymond attended those dinners and, more importantly, learned of her national origin there.

5

examination that at the time he conducted the Step I hearing and issued his decision he did not know plaintiff's national origin. However, when asked "[a]nd you processed these documents when the parking authority took over, did you not," Raymond responded "[y]es." Trial Tr. 2.38, at 1-3.

Second, plaintiff argues that Raymond knew she was Haitian because she spoke with him on three occasions–the Local 115 CBA contract negotiation meeting, on behalf of Patrick Jacques and her own Step I hearing.[4] In her rebuttal, plaintiff testified that she had conversations at one of these meetings with "these gentlemen" during which "they"[5] learned she was from Haiti because her national origin was discussed. Trial Tr. 3.141, at 6-17. This testimony, combined with the testimony that Raymond processed her employment forms which indicated she was from Haiti, could persuade a reasonable jury that Raymond knew she was Haitian. Of course, knowledge of someone's national origin alone is insufficient to prove intent to discriminate.

### B. Circumstantial Proof of Intent to Discriminate

Even assuming that Raymond knew plaintiff is Haitian, plaintiff still must prove that he acted with the intent to discriminate when he terminated her. As mentioned supra, plaintiff may pursue her discrimination claim under the pretext or mixed motive theories. Under the

---

[4] Plaintiff also argues that Raymond must have known she was Haitian because of her heavy accent. While national origin discrimination may be evidenced by a heavy foreign accent, see Gold v. FedEx Freight E., Inc., 487 F.3d 1001 (6th Cir. 2007) (holding that a manager's comments regarding the plaintiff's accent were direct evidence of national origin discrimination), plaintiff does not argue this is what happened to her. Raymond testified that her accent did not indicate to him her specific national origin–Haitian. Indeed, it is not clear just by hearing plaintiff speak that she is from Haiti. A reasonable person could conclude she is from any number of Caribbean nations.

[5] It is unclear if plaintiff is referring to Boschetti, Raggozzino, Raymond or even her union representative Butch Lane.

McDonnell Douglas burden-shifting framework, a plaintiff attempting to prove a discrimination claim under a pretext theory must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. See McDonnell Douglas, 411 U.S. at 802. If the plaintiff satisfies this burden, then an inference of discriminatory motive arises and the burden of production falls on the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). If the defendant does so, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination. See id. at 507-08.

The Court of Appeals has not decided the question whether a plaintiff pursuing a mixed-motive theory of discrimination must satisfy each of the elements of the McDonnell Douglas prima facie case. Makky, 541 F.3d at 215. In Makky, the Court stated,

> The McDonnell Douglas burden-shifting framework does not apply in a mixed-motive case in the way it does in a pretext case because the issue in a mixed-motive case is not whether discrimination played the dispositive role but merely whether it played "a motivating part" in an employment decision. It is significant that in Desert Palace, the Court omitted any discussion of the McDonnell Douglas framework as a requirement in mixed-motive cases.

Makky, 541 F.3d at 214 -215 (holding "that a mixed-motive plaintiff has failed to establish a prima facie case of a Title VII employment discrimination claim if there is unchallenged objective evidence that s/he did not possess the minimal qualifications for the position plaintiff

7

sought to obtain or retain").

A mixed-motive plaintiff is not required to present direct evidence to prove that discrimination was a motivating factor. See Desert Palace, 539 U.S. at 92. In Desert Palace, the Supreme Court held that to establish a jury question of a Title VII violation "a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" Id. at 101. Thus, a plaintiff who can present only circumstantial evidence of discrimination may proceed under the mixed-motive theory. See id. However, even under the mixed-motive theory, a plaintiff must produce some evidence of discrimination. Tarr v. Fedex Ground Package System, Inc., Civ. A. No. 08-1454, 2010 WL 331846, at *8 (W.D. Pa. Jan. 28, 2010); see also Desert Palace, 539 U.S. at 99 (the plaintiff still must "prove [her] case by a preponderance of the evidence using direct or circumstantial evidence") (citing Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 n.3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). "This requires a showing that (1) the defendant took an adverse employment action against the plaintiff, and (2) [national origin] was a motivating factor for the defendant[']s action." O'Donnell v. LRP Publications, Inc., Civ. A. No. 08-1560, 2010 WL 571849, at *6 (E.D. Pa. Feb. 16, 2010) (citing White v. Baxter Healthcare Corp., 533 F.3d 381, 400 (6th Cir. 2008)).

Turning to the relevant record evidence and viewing it in the light most favorable to plaintiff as the non-moving party, I find that there is no sufficient evidentiary basis for a reasonable jury to find for plaintiff on a mixed-motive theory of liability.[6] Plaintiff has presented

---

[6] Defendant first objected to charging the jury on the mixed motive-question in its pre-trial memorandum and proposed jury instructions and has consistently argued throughout the case that the jury should not be charged on this question. I overruled defendant's objection and

no direct evidence of discrimination. Plaintiff's case turns on one issue: whether Kim Earland and James Aria, non-Haitians, were treated more favorably than plaintiff.[7] Like plaintiff, they were PPA cashiers who were suspended with the intent to terminate by Ragozzino and Boschetti for sleeping while on duty. Unlike plaintiff, Raymond did not terminate them after their Step I

---

gave the mixed-motive charge to the jury. My findings here support both the granting of judgment as a matter of law to defendant as well as reversing my prior ruling and sustaining defendant's objection to the instruction because the issue underlying both questions is the same: has plaintiff presented sufficient evidence for a reasonable jury to conclude that her national origin was a motivating factor in defendant's decision to terminate her.

[7]   At oral argument, plaintiff's counsel argued that there are three "principle" pieces of evidence on which plaintiff relies to prove discrimination: James Aria, Kim Earland and Raymond's contradictory testimony. With respect to the latter, at the trial, Raymond was asked on cross examination "[w]as your decision in this case, sir, influenced in any way by Marie Cange's national origin," to which he responded, "not at all." Trial Tr. 2.148, at 9-11. During oral argument, plaintiff's counsel argued that the jury was entitled to disbelieve this testimony because Raymond made contradictory statements during the trial about the consistent application of the work rule. Plaintiff did not address this issue in its briefs. Specifically, Raymond testified that he consistently applied the work rule about sleeping while on duty. Trial Tr. 2.172, at 9-11. Plaintiff appears to argue that this statement is contradictory because Raymond terminated plaintiff but not Earland and Aria. Plaintiff argues that this shows the work rule was not applied consistently. I fail to see the contradiction between Raymond's statements. Raymond is consistent in his testimony that plaintiff's termination was in line with the work rule. Just because plaintiff disagrees with the outcome of Raymond's decision does not make it contradictory. As discussed infra, I find that her attempts to prove the contradiction, i.e. that Aria and Earland were treated more favorably, do not withstand scrutiny. Therefore, plaintiff has failed to identify any reason why the jury was entitled to find that Raymond was lying when he stated that his decision was not based on her national origin. See Hamilton v. Paulson, 542 F. Supp. 2d 37, 54 (D.D.C. 2008) (holding that where there were no inconsistencies in defendant's witnesses' statement or the inconsistencies failed to give rise to any inference of discriminatory motive plaintiff had failed to create a genuine dispute of material fact with respect to the authenticity of the defendant's explanation for the selection of another candidate over the plaintiff); see also Hutchins v. United Parcel Service, Inc., 197 Fed. Appx. 152, 161 (3d Cir. 2006) (holding that plaintiff failed to prove that the defendant intended to discriminate when his only evidence was that defendant's testimony was contradictory and the testimony did not contradict itself). As discussed supra, plaintiff bears the burden of proving by a preponderance of the evidence that her national origin was a motivating factor in Raymond's decision. Thus, I will focus on the Aria and Earland comparator evidence.

grievance hearings.

### 1. James Aria

Plaintiff argues that Aria was treated more favorably because Raymond investigated Aria's excuse that he was on a break but Raymond did not investigate her similar claim. The evidence adduced at trial showed that Raymond did not terminate Aria because Raymond found that he was not sleeping while on duty. The first thing that Aria told Raymond at his Step I hearing was that he was sleeping on his break. Raymond had his staff check with Aria's supervisor and verified that he was in fact sleeping on his break. Raymond also testified that if Aria's supervisor had not been available he would have checked Aria's shift report to determine if he was on break.

Plaintiff testified that at her Step I hearing Boschetti read the charges and then she said to Raymond, "I'd like to see the tape, I read sometime." Trial Tr. 1.79, at 1. Plaintiff further testified that after viewing the tape, "Mr. Raymond asked me, do -- do I have something else to say? I said, yes. I said, that was my break where I sleep, that was my break." Trial Tr. 1.83, at 14-16. Raymond testified that at the Step I hearing plaintiff initially told him that she was praying but that after the union representative brought up her break plaintiff then said that she was sleeping on her break. Plaintiff never told anyone–including Raymond–about an agreement she had with Kim Earland to start her break at 4:00 a.m. Defendant's policy is that breaks are assigned by supervisors and that there is always a supervisor on duty. However, both plaintiff and Raymond testified that no supervisor was on duty during her shift. The video footage of plaintiff shows her sleeping from 4:01 to 4:03 a.m. She "partialed out" at 4:04 a.m. Defendant contends that plaintiff's break did not begin until 4:04 a.m. when she partialed out, regardless of

any agreement she had with Earland to start her break at 4:00 a.m.

Plaintiff contends that if her claim that she was sleeping on her break had been investigated, like Aria's, then Raymond would have found that she had an agreement with her co-worker that evening, Kim Earland, to take her break at 4:00 a.m. and that she was sleeping on her break. While in Aria's case Raymond first checked with Aria's supervisor to find out if Aria was on a break, Raymond could not check with plaintiff's supervisor because he testified that there was no supervisor on duty. Instead, Raymond reviewed plaintiff's shift report to determine when plaintiff "partialed out" marking the start of her break. Raymond could not "investigate" the agreement that plaintiff had with Earland to go on her break at 4:00 a.m. because plaintiff never told Raymond about this agreement.

It is unreasonable for a jury to infer that Raymond treated Aria more favorably than plaintiff because she is Haitian. Plaintiff's argument that her case was not investigated is not supported by the evidence. Raymond could not check with her supervisor, but did review her shift report. The only other fact which he did not check–plaintiff's agreement with Earland–was information which plaintiff never divulged to Raymond until the trial.[8] Furthermore, Raymond testified that even if plaintiff had told him about the agreement she still would have been terminated because an agreement with a co-worker does not constitute taking a break. Rather "partialing out" marks the start of the break. Plaintiff testified that she did not partial out until 4:03 a.m. The Aria comparator evidence is insufficient as a matter of law to demonstrate that plaintiff's national origin was a motivating factor in her termination.

---

[8] Plaintiff admitted at trial that she did not tell Raymond about the agreement with Earland. Trial Tr. 1.120, at 19-22. Plaintiff does not dispute defendant's assertion that the trial was in fact the first time Raymond heard about the agreement.

## 2. Kim Earland

At this point, plaintiff's entire case hangs on showing that Kim Earland was treated more favorably than she. A mixed-motive plaintiff must be able to prove by a preponderance of the evidence that her purported comparators were treated more favorably. See Harris v. Giant Eagle, Inc., (6th Cir. 2005) (holding that the District Court properly entered summary judgment for the defendant because the plaintiff would not have succeeded on her mixed-motive theory when the comparator was not treated more favorably than the plaintiff). The Court of Appeals has held, "a plaintiff does not create an issue of fact by selectively choosing a single comparator who was allegedly treated more favorably, while ignoring a significant group of comparators who were treated equally to her." Simpson v. Kay Jewelers, 142 F.3d 639, 642 (3d Cir.1998); see also Cain v. Wellspan Health, Civ. A. No. 08-1704, 2009 WL 5112352, at *9 (M.D. Pa. Dec. 17, 2009) (holding that when the defendant demonstrated that at least four other Caucasian employees–two of whom were also males–had been terminated for the same offense as the plaintiff, then even if the plaintiff and her proffered comparator were similarly situated, the mere fact that the comparator was demoted and not terminated does not as a matter of law establish that male Caucasians were treated more leniently); Milliron v. Pilot Travel Centers, LLC, Civ. A. No. 06-262, 2009 WL 2579200, at *11 (W.D. Pa. Aug. 20, 2009) (holding that even if the Court were to credit the plaintiff's contention that she was similarly situated to two other comparators, defendant was still entitled to summary judgment on plaintiff's age discrimination claim when defendant had produced evidence that 66 other employees were terminated for violating the company's substance abuse policy in the same region or zone as plaintiff and fifty-six of those were younger than plaintiff); Whitaker v. Holy Family Social Svcs., 309 Fed. Appx. 654, 656 (3d

Cir. 2009) (affirming the District Court's grant of summary judgment for the defendant because the plaintiff's single comparator evidence was insufficient to cast doubt on the defendant's explanation for the plaintiff's termination). Furthermore, "[e]vidence of the more favorable treatment of a single member of a non-protected group . . . 'can not be viewed in a vacuum.'" Id. (quoting Simpson, 142 F.3d at 645).[9]

No reasonable juror could find that the Earland comparator evidence is sufficient to demonstrate that plaintiff's national origin was a motivating factor in defendant's decision to terminate her. Earland and plaintiff were treated similarly in multiple respects. Both were initially suspended with the intent to terminate by Raggozzino and Boschetti. Both proceeded to a Step I hearing before Raymond where they were given the opportunity to present their reasons why they should not be terminated. In neither woman's case did Raymond consider as part of his final decision any video footage where it was unclear whether she was sleeping. Thus, with respect to plaintiff, Raymond testified that she was not disciplined for anything appearing on the video footage prior to 4:00 a.m. because he could not verify whether she was sleeping. The video footage from 3:24 a.m. showed plaintiff's head was down on the desk for approximately 21 seconds and he could not determine from that whether she was asleep. Similarly, Raymond testified that the video of Earland only showed her hat covering her eyes and he was unable to determine from the video footage whether she was actually sleeping.

Raymond testified that there were two factors that differentiated plaintiff's case from Earland leading him to terminate plaintiff but not Earland. First, he considered as a mitigating

---

[9] While Whitaker involved analysis under the McDonnell Douglas framework, I find no reason why comparator evidence should be viewed in vacuum under the mixed-motive framework.

circumstance Earland's explanation that she put her head down on the desk because she was having problems with her vision due to the oncoming light of the cars. Plaintiff argues Earland was treated more favorably because Raymond considered her mitigating circumstance but not plaintiff's mitigating circumstances–that she was on break and on medication. Raymond testified that he did not consider plaintiff's excuse that she was on her break because "she was not forthright in the beginning."[10] Trial Tr. 2.72, at 6-7. As discussed above, plaintiff testified that when she arrived at the Step I hearing and Raymond asked her what he would see on the video her first response was "I'd like to see the tape, I read sometime." Trial Tr. 1.79, at 1. After the tape was reviewed, plaintiff then stated she was on a break. Raymond in fact considered this mitigating circumstance and had his staff check the shift report to determine if she was on break but she was not. Nor did she tell him about the medication she was on and her doctor's note. Plaintiff's own admitted failure to present this mitigating evidence precluded Raymond from considering it.

The second difference was that Raymond could not determine from the video whether Earland was sleeping, while portions of the video of plaintiff clearly indicated to him that she was sleeping. Raymond testified that his review of the video footage of Earland revealed only that her cap was pulled down and she was bending over; he could not see her eyes. Butch Lane, who was plaintiff's and Earland's union representative and who was present at the viewing of

---

[10] Raymond did not have an opportunity at the Step I hearing to consider plaintiff's doctor's note that said plaintiff was on medicine which made her drowsy because plaintiff did not present the note until the Step III hearing.

both of their videos, independently confirmed that this is what the Earland video showed.[11] Conversely, plaintiff does not dispute that the video of her at 4:01 a.m. clearly shows her sleeping.

Neither I nor the jury may question Raymond's business judgment in determining that Earland was loafing. Importantly, there is nothing in Raymond's treatment of plaintiff which would lead a reasonable jury to conclude that Earland was treated more favorably than plaintiff. The same policy was applied to both women, but because of the different facts plaintiff was terminated and Earland was not.[12] Furthermore, defendant presented evidence of numerous other non-Haitian employees also terminated for sleeping while on duty.[13]

Accordingly, I will enter judgment as a matter of law in favor of defendant on the mixed-motive theory because no reasonable jury could conclude that her national origin was a motivating factor in the decision to terminate her.

A District Court judge may enter judgment on the basis of unanimous verdicts reached by a jury. See Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1581 (Fed. Cir. 1995);

---

[11] "Q. Was there any proof that [Earland] was sleeping?
"A. No, they couldn't prove that, because she had her hat down and they couldn't see her eyes." (Tr. 3.111).

[12] Instead, Earland was charged with loafing. PPA's written policies do not define loafing and plaintiff argues that Raymond uses this vagueness as a tool to discriminate. While loafing is not defined, no one disagrees about what constitutes sleeping. Plaintiff was observed sleeping and Earland was not. This difference alone is sufficient to distinguish Earland and plaintiff and to explain why Earland was not terminated and plaintiff was terminated.

[13] Raymond oversaw the grievance hearings of several other PPA employees and terminated Ruth Wilder (African-American), Terri Hawkins (African-American), Michael Hoffman, Ronald Alexander (African-American), Carrin Irvin-Dockery (African-American) and Charlene Heeney (Caucasian)–none of whom are Haitian–for sleeping while on duty.

Withers v. Ringlein, 745 F. Supp. 1272 (E.D. Mich. 1990). Therefore, I will accept the jury's verdict finding that plaintiff failed to prove by a preponderance of the evidence that her national origin was a determinative factor in defendant's decision to terminate her and enter judgment in favor of defendant on that claim.

Finally, plaintiff has moved for a mistrial and requests a new trial on the mixed-motive question. Pursuant to Rule 50(c)(1), "[i]f the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial." Because I will accept the jury's verdict on the pretext question and plaintiff seeks a new trial only on the mixed-motive question, the remaining question for the jury at a second trial would be as to the mixed-motive issue. Should the Court of Appeals vacate or reverse my Order granting judgment as a matter of law to defendant, presumably it will have found that a reasonable jury could conclude that plaintiff's national origin was a motivating factor in defendant's decision to terminate her. I will therefore conditionally grant plaintiff's request for a new trial on the mixed-motive issue.

An appropriate Order follows.